Averill *v.* Loucks.

---

## SCHENECTADY SPECIAL TERM, February, 1849. *Paige,* Justice.

### AVERILL *vs.* LOUCKS.

A judgment or other security may be taken and held for future responsibilities and advances to the extent of the amount of the judgment or security. But to enable a creditor thus to hold a judgment or other security it must be a part of the original agreement that the judgment shall be a security for such responsibilities and advances.

It cannot, as against third persons, be held to meet and cover new and distinct engagements subsequently entered into by the parties.

Where a mortgage or judgment is taken for future responsibilities or advances, *it seems* that it will not cover further responsibilities or advances, as against an incumbrance of a third person obtained intermediate the judgment or mortgage and such further responsibilities and advances.

Where a bond and warrant of attorney are given as a security for existing and future responsibilities, to continue until the judgment to be entered up on such bond and warrant shall be cancelled of record, the creditor has a right to hold such judgment as a security for any future responsibility assumed by him, until the same is cancelled of record. Until it is thus cancelled, the judgment, under such agreement, does not become *functus officio,* although there may have been a time, subsequent to the giving of the bond and warrant, when there was no liability on the part of the creditor, and no indebtedness from the debtor, to him.

The supreme court, as a court of law, has always exercised an equitable jurisdiction over judgments entered up by confession, on bonds and warrants of attorney.

And upon an application for relief, in such cases, the court will receive parol evidence in relation to the extent and object of the bond and warrant, and the consideration thereof.

Taking a bond and warrant of attorney from one of two partners, for a partnership debt, extinguishes the liability of the other copartner. The debt, as a partnership debt, becomes merged in the judgment; and the individual liability of

Averill *v.* Loucks.

the judgment debtor is substituted in the place of the joint liability of both partners.

Where real estate was originally purchased by one of two partners, and paid for out of his individual funds, and the only interest of the partnership in the premises is on account of improvements made thereon with the funds of the partnership, the actual interest, in the premises, of the partner advancing the purchase money—at least his individual interest therein—is liable to be sold on execution against him.

But *it seems* that the partnership creditors have a claim, in equity, to have the whole value of the improvements applied in payment of their debts, in preference to the separate creditors of the individual partners.

And the equitable interest in such improvements, chargeable with the debts of the partnership, will pass under an assignment made by the copartners for the benefit of the partnership creditors; and upon such equitable interest a judgment obtained by a separate creditor against the copartner who purchased the real estate will not, as against the partnership creditors, be a lien.

If improvements are made upon such property, with the partnership funds, intermediate the giving of a judgment by one of the partners as a security for future responsibilities, and the incurring of such responsibilities by the judgment creditor, the equitable interest of the other copartner to be reimbursed his share of the partnership funds applied to the making of such improvements, is prior in point of time to the lien of the judgment; upon the principle that an incumbrance which intervenes between a judgment and further advances takes priority over the latter.

The lien of a judgment does not attach, in equity, upon the mere legal title to land, existing in the defendant, when the equitable title is in a third person.

And if a purchaser under the judgment has notice of the equitable title, before his purchase and the actual payment of the money, he cannot protect himself as a bona fide purchaser.

This was a motion by the assignees of Loucks & Gray for a rule to compel William S. Bellinger, the owner of the judgment in this suit, to enter a satisfaction thereof, and to direct the sheriff to sell, on the execution issued upon the judgment, the individual property of the defendant, and not to sell the premises secondly described in the sheriff's advertisement of sale. The defendant George P. Loucks, and Morgan Gray, were general partners, doing business under the name of Loucks & Gray. On the 4th of September, 1848, they failed, and made an assignment of all their real and personal estate to T. O. Bailey and P. L. Loucks, in trust, for the benefit of the creditors of Loucks & Gray, and of George P. Loucks. The judgment in this suit was docketed on the 11th of July, 1846. It was enter-

ed up on the 8th of July, 1846, on a bond conditioned for the payment of $2000 and a warrant of attorney. The bond and warrant were in the usual form. They were given by George P. Loucks, the defendant, on the 1st of July, 1846, to the plaintiff, under an agreement that they were to be held by him as a continuing security for all endorsements theretofore made and thereafter to be made by the plaintiff for the defendant and for the firm of Loucks & Gray, until the judgment to be entered up on such bond and warrant should be cancelled of record. The plaintiff, under this agreement, continued from time to time to endorse for Loucks & Gray until the 30th of June, 1848, when he endorsed a draft for Loucks & Gray for $2000; which he afterwards became liable to pay, and actually did pay. The plaintiff, on the 19th of October, 1848, issued an execution on the judgment, to the sheriff of the county of Montgomery. On the 8th of January the plaintiff, for the sum of $2070,59, assigned the judgment to George Yost and William I. Bellinger. And Yost assigned the same to Bellinger, who was a creditor of Loucks & Gray. The assigned property was not sufficient to pay all the debts provided for in the assignment. The sheriff had advertised the real estate of the defendant for sale. The premises secondly described in his advertisement of sale were originally purchased by the defendant with his individual funds, but improvements had been made thereon by the firm of Loucks & Gray, with the funds of the partnership, and for the purposes of the partnership.

*T. B. Mitchell*, for the assignees of Loucks & Gray, &c.

*D. G. Lobdell*, for William I. Bellinger.

PAIGE, J.  A judgment or other security may be taken and held for future responsibilities and advances, to the extent of the amount of the judgment or security. But to enable a creditor to hold a judgment or other security for future responsibilities and advances, it must be a part of the original agreement that the judgment, or security, should be a security for such

responsibilities and advances. (*Brinckerhoof* v. *Marvin,* 5 *John. Ch.* 325; *Livingston* v. *McInlay,* 16 *John.* 165; *Morrell* v. *Jenkins,* 5 *Cowen,* 441.) It cannot, as against third persons, be held to meet and cover new and distinct engagements subsequently entered into by the parties. (*Troup* v. *Wood,* 4 *John. Ch.* 246.) A mortgage or judgment once paid cannot be restored or revived by any subsequent agreement of the parties. (*Id. Marvin* v. *Vedder,* 5 *Cowen,* 671. *De La Vergne* v. *Evertson,* 1 *Paige,* 181.) And a mortgage, or a judgment entered upon a bond and warrant of attorney, cannot be enlarged beyond the amount of the mortgage, or the condition of the bond, and held as a security for moneys not mentioned therein, as against a subsequent incumbrancer. (*St. Andrew's Church* v *Tompkins,* 7 *John. Ch.* 14. *Bergen* v. *Boerum,* 2 *Caines,* 256.) And where a mortgage or judgment is taken for future responsibilities or advances, it seems that it will not cover further responsibilities or advances, as against an incumbrance of a third person obtained intermediate the judgment or mortgage and such further responsibilities and advances. (5 *John. Ch.* 326.)

In this case the bond and warrant of attorney of the defendant Geo. P. Loucks was given to Lewis Averill as a continuing security for all endorsements theretofore made and thereafter to be made by Averill for the defendant, and for the firm of Loucks & Gray, until the judgment to be entered up on such bond and warrant of attorney should be cancelled of record. The endorsement for which the judgment is sought to be held as security was made on the 30th of June, 1848, prior to the failure of Loucks &.Gray, and prior to their assignment to Bailey and P. I. Loucks. On the 30th of June, 1848, Averill endorsed a draft for Loucks & Gray for $2000, which he afterwards became liable to pay, and did actually pay. Upon the cases cited I think Averill had a right to hold the judgment as security for his liability on account of this endorsement. It was a part of the original agreement that Averill should hold the judgment as a security for subsequent endorsements. The cases in relation to a judgment or mortgage being held to meet or cover new

Averill *v.* Loucks.

and distinct engagements subsequently entered into by the parties, are not applicable.  I do not regard as of any importance, (so far as the subsisting validity of the judgment is concerned,) the fact that there may have been a time between the giving of the bond and warrant of attorney and the 30th of June, 1848, when there was no endorsement of Averill for Loucks & Gray, or for Loucks, and no indebtedness from them, or either of them, to him.  Averill had a right, under the original agreement, to hold the judgment as his security for any future endorsement made by him for Loucks & Gray, or for Loucks, until the judgment was cancelled of record.  Under this agreement the judgment did not become *functus officio* until it was cancelled of record.

It is objected by the counsel of the assignees of Loucks & Gray, that parol evidence is inadmissible to vary the terms of the bond and warrant of attorney.  The assignees themselves first resorted to parol evidence to show the extent and object of the bond and warrant.  Besides, one of the assignees states, in his affidavit, that the bond and warrant of attorney were given to indemnify Averill against certain endorsements previously made by him, and that the notes so endorsed had been paid and taken up by Geo. P. Loucks.  Bellinger, the present owner of the judgment, certainly had a right to rebut or qualify this parol evidence, by evidence of the same character.  If parol evidence is to be excluded on both sides, then no ground remains for the application to have the judgment satisfied of record.  Without this parol evidence the bond must be taken to be as it purports, on its face, an ordinary bond for the payment of money.  And it is not pretended that Geo. P. Loucks has paid to Averill any part of the money stipulated to be paid to him, by the condition of the bond.  But I apprehend that upon this application parol evidence is admissible to explain the extent and object of the bond.  The application is to the equitable jurisdiction of the court.  This court, as a court of law, has always exercised an equitable jurisdiction over judgments entered up by confession, on bond and warrant of attorney.  (*Frasier* v. *Frasier*, 9 *John.* 80.)  And it has generally been found necessary, on ap-

plication for relief in such cases, both at law and in equity, to receive parol evidence in relation to the extent and object of the bond and warrant, and the consideration thereof. And I am not aware of a case where such evidence has been rejected, on a summary application to the equitable powers of this court, or on a bill filed in a court of equity, for relief. In *Livingston* v. *McInlay,* (16 *John.* 165,) it was agreed, at the time the bond was given, that further advances should be made by the plaintiff to the defendant. This agreement formed no part of the condition of the bond. On an application to have the amount of the further advances deducted from the amount to be levied on the execution issued upon the judgment entered up on the bond, parol evidence of such agreement was received without objection.

It is an established rule in chancery, that parol evidence is admissible to show that a deed absolute on its face was intended by the parties as a mortgage. (1 *Paige,* 206. 2 *Cowen,* 324. 1 *John. Ch. Rep.* 594.) In *Moses* v. *Murgatroyd,* (1 *John. Ch Rep.* 118,) where an assignment of personal property, general and absolute on its face, was admitted to have been given as a security or indemnity merely, it was held by Chancellor Kent that parol evidence was admissible to explain the extent and object of the assignment. It has frequently been held that an assignment of a chose in action, although absolute and under seal, may be shown by parol evidence to have been given and intended as a mere mortgage or collateral security. (20 *Wend.* 632. 1 *Hill,* 632.)

But the parol evidence objected to, relates to the consideration of the bond and warrant of attorney. And since the decision of *McCrea* v. *Purmort,* (16 *Wend.* 460,) in the court of errors, the utmost latitude of inquiry into the consideration of deeds and other written contracts has been allowed. The decision in that case authorizes the reception of parol evidence, not only to show another consideration consistent with the one expressed, but also a different consideration, one inconsistent with the consideration expressed in the deed or contract. The rule adopted in the case of *McCrea* v. *Purmort,* allows the consideration clause of a deed or other written contract, in all cases, to be ex-

plained or contradicted by parol evidence, where the object is not to defeat the deed or contract, or to change their legal effect. Under the revised statutes, the consideration of sealed instru-- ments may be inquired into, to the same extent as if they were unsealed.   (2 *R. S.* 406.)

Where there is no change of the parties to a suit, no person but the defendant can take the objection that the execution did not issue until after the expiration of two years, without a revi- val of the judgment by scire facias.   In this case the defendant consented that the execution might issue without such revival. (1 *Cow.* 739.   *Gra. Pr.* 350, 2d ed.)

Taking the bond and warrant of attorney from George P. Loucks, and entering up a judgment thereon, extinguished the liability of Gray, the copartner of Loucks, to Averill.   The debt, as a partnership debt, became merged in the judgment against Loucks; and the individual liability of Loucks was substituted in place of the joint liability of both partners. (5 *Hill*, 135, 82, 85.   1 *Denio*, 225.   18 *John.* 459, 481, 2, 3.) Loucks being thus made individually liable to Averill, he has a claim on the partnership property for the amount of the judg- ment against him, which he is entitled to have paid out of the surplus, if any remains after the payment of all the partnership creditors.   (4 *John. Ch.* 522.   *Story on Part.* § 93, *note.*) Under the decision in *Coles* v. *Coles*, (15 *John.* 161,) partners, in the absence of special covenants between them, hold real es- tate, purchased with partnership funds, and for the purposes of the partnership, as tenants in common and not as partners; and the rules relative to partnerships do not apply.   This decis- ion, Chancellor Kent says, (3 *Kent's Com.* 37,) goes to the entire subversion of the equity doctrine now prevalent in England relative to real estate belonging to a partnership.   According to that doctrine, the real estate belonging to a copartnership is, in equity, treated as personal estate, and is disposable and dis- tributable as personal estate; and the persons in whom the legal estate is vested are considered as trustees for the partner- ship.   (*Story on Part.* §§ 92, 93.   3 *Kent's Com.* 37.   *Story's Eq. Jur.* § 674.)

Averill *v.* Loucks.

The supreme court of Massachusetts, in *Goodwin* v. *Richardson*, (11 *Mass. Rep.* 469,) seemed to consider that partners purchasing real estate with their joint funds and taking one conveyance to themselves as tenants in common, would hold their undivided moieties by separate and independent titles; and that the same would go, on the insolvency of the firm, or on the death of either partner, to pay their respective creditors at large. But the decision in that case was probably controlled by a local statute which gave the creditors of the copartnership the same remedy against the separate estate of a deceased copartner, as his individual creditors had. If the doctrine as laid down in *Coles* v. *Coles* is to be regarded as the law of the state, then a separate judgment creditor of one of several partners, would have a right to sell, on his judgment, the undivided share of such partner in real estate held by all the partners for partnership purposes, although the personal property of the partnership was insufficient to pay all the partnership debts. (*See note at the end of this opinion.*)

The defendant George P. Loucks, in his affidavit, states that the premises secondly described in the sheriff's advertisement were purchased by him, and that all the payments which had been made on account of the purchase money, were made by him, out of his individual funds, and that the only interest of Loucks & Gray in the premises was on account of improvements made thereon with the partnership funds. The actual interest of George P. Loucks in these premises, at least his individual interest therein, is liable to be sold on the execution against him. Gray, as one of the partners of that firm, has an equitable interest in such improvements, which doubtless passed under the assignment to Bailey and P. I. Loucks in trust for the partnership creditors of Loucks & Gray. Upon this equitable interest the judgment of Averill is no lien. The lien of a judgment does not attach, in equity, upon the mere legal title to land existing in the defendant, when the equitable title is in a third person. And if a purchaser under the judgment has notice of the equitable title, before his purchase and the actual payment of the purchase money, he cannot protect himself as a bona fide

purchaser. (*Ells* v. *Tousley*, 1 *Paige*, 280.) In chancery, the general lien of a judgment is controlled by equity, so as to protect the rights of those who are entitled to an equitable interest in the lands, or in the proceeds thereof. (*White* v. *Carpenter*, 2 *Paige*, 217.) And the lien will be limited to the actual interest which the judgment debtor has in the estate. (*Keirsted* v. *Avery*, 4 *Paige*, 9.) Judgment creditors have no preference over prior equitable claims against the estate of the debtor. And the purchaser under a judgment, in equity, takes the land subject to an equitable claim, prior in point of time to the judgment, of which he had notice at, or prior to the sheriff's sale. (*Sanford* v. *McLean*, 3 *Paige*, 117. 2 *Id.* 586.) The affidavits do not show when the premises secondly described in the sheriff's advertisement were purchased by George P. Loucks, nor when the improvements were made thereon, whether before or after the judgment of Averill was docketed, or before or after the 30th of June, 1848, when Averill endorsed the draft of $2000, for which the judgment is now sought to be held as security. If the improvements were made with the partnership funds previous to the endorsement of Averill, on the 30th of June, 1848, the equitable interest of Gray will be prior in point of time, to the lien of the judgment, upon the principle that an incumbrance which intervenes a judgment, and further advances takes priority over the latter. I do not intend to express an opinion that Gray, or his assignees, will have no claim in equity for Gray's share of the improvements, even if they were made after the endorsement by Averill of the $2000 draft on the 30th of June, 1848. Nor do I wish to be understood as deciding definitively, that the partnership creditors of Loucks & Gray have no claims in equity, to have the whole value of the improvements made on the premises secondly described in the sheriff's advertisement, applied in payment of their debts, in preference to the judgment of Averill. I shall leave that question to be settled in some proceeding, other than on a summary application to the court by motion. If the assignees of Loucks & Gray elect to allow the sale under the judgment to proceed, they can give notice, at the sheriff's sale, to the purchaser, of

their claim as assignees, to the equitable interest of Gray and of the firm of Loucks & Gray in the improvements made with the partnership funds; and the purchaser will, in that event, take subject to whatever equitable interest they have, as such assignees, in the premises.

Bellinger has a right to sell, under his judgment, all the individual interest of George P. Loucks in these premises.

The motion must be denied, but without costs; with liberty to the assignees of Loucks & Gray to apply for relief in relation to their equitable interest as such assignees, in the premises secondly described in the sheriff's advertisement, in a suit to be commenced by them for that purpose.

*Note.* In *Buchan* v. *Sumner*, (2 *Barb. Ch. Rep.* 167,) Chancellor Walworth held that real estate purchased with partnership funds, or for the use of the firm, is in equity chargeable with the debts of the copartnership, and with any balance which may be due from one copartner to another upon the winding up of the affairs of the firm; and that the separate creditors of the individual partners have no equitable right to any part of such real estate until the debts of the firm are provided for, and the rights of the partners, as between themselves, are fully protected. This decision was overlooked when the foregoing opinion was written. It seems to settle the question, as to the right of the partnership creditors of Loucks & Gray to have the whole value of the improvements made on the premises secondly described in the sheriff's advertisement applied in payment of their debts in preference to the separate creditors of either Loucks or Gray.

———————————

DELAWARE GENERAL TERM, March, 1849.   *H. Gray, Mason, and Morehouse,* Justices.