MEGIBBEN'S ADM'RS *et al. v.* PERIN *et al.*

(*Circuit Court, S. D. Ohio, W. D.* January 30, 1892.)

1. GUARDIAN AND WARD—SALE OF REALTY.

Code Civil Proc. Ky. § 490, authorizes a sale by proceedings in chancery of real estate owned jointly by two or more persons when the same cannot be divided without materially impairing its value, even though some of the owners are infants or of unsound mind. *Held,* that a sale thereunder of an infant's interest on application of its statutory guardian conveys an absolute title when the court finds that the requisite facts exist. *Power* v. *Power,* (Ky.) 15 S. W. Rep. 523, followed.

2. JURISDICTION OF FEDERAL COURTS—DIVERSE CITIZENSHIP—ARRANGEMENT OF PARTIES.

Where a part owner of a distillery joins a number of associates in a contract to purchase the whole, and for that purpose agrees to convey his existing interest therein, and afterwards, being ready and willing to perform his contract, joins with the other vendors in a suit for specific performance, he is a proper party plaintiff, and cannot be considered a defendant for the purpose of destroying the diversity of citizenship necessary to maintain the suit in a federal court.

3. SPECIFIC PERFORMANCE—STOCK OF CORPORATION.

A clause in a contract providing for the purchase of all the stock of a distillery company may be specifically enforced against the purchasers when it appears that it was only adopted as an expedient to secure the performance of the main stipulation, which was for the transfer of the real estate and plant.

4. SAME—INCUMBRANCES.

A vendee cannot avoid a specific performance of his contract because of a mortgage on the lands when it appears that an agreement has been made for the discharge thereof immediately upon the transfer, which discharge can be provided for in the decree.

In Equity. Suit by T. J. Megibben's administrators and others against Oliver L. Perin and others for specific performance of a contract. Decree for complainants.

*James O'Hara* and *Peck & Shaeffer*, for complainants.

*Ramsey, Maxwell & Ramsey*, for respondents.

SAGE, District Judge. The bill is for the specific performance of the following contract:

"In consideration of the sum of twenty-five dollars in cash, the payment of which is hereby acknowledged, said payment having been made by O. L. Perin, upon behalf of himself and others, unto James K. Megibben and the heirs of Thomas J. Megibben, deceased, and of the undertakings of said Perin, for himself and others, as hereinafter set forth, it is agreed as follows:

"Said Megibben hereby agrees to sell and convey unto said Perin, for himself and others, the distilleries Excelsior and Sharpe, situated at Lair's station, Kentucky, with all grounds connected therewith, being about sixteen acres, more or less, and all flour-mills, warehouses, buildings, and outbuildings connected therewith, and all good-will, brands, trade-marks, copyrights, patents, lately held by Thomas J. Megibben, deceased, and James K. Megibben, and used by him and J. K. Megibben in connection with their business in or about said distilleries and flour-mill, or either of them, or the right to use all patents and processes used by him or them in distillation, and all appurtenances and appliances connected with said distilleries and premises.

"Said property to be conveyed by deed of general warranty, free of all incumbrances; taxes now levied to be paid by vendor. Price to be paid for said property $42,500.00, to be paid in cash on delivery of deed, after examination and approval of title.

"*Cincinnati, July 9, 1890.*"

"It now appearing that the above properties are owned by two corporations, the agreement is that the entire stock of said corporations shall be transferred to Perin and associates upon the above considerations, said corporations being free from all indebtedness. The boarding-house property shall be conveyed to the said Perin on same consideration.

[Signed]               "JAS. K. MEGIBBEN.
                        "JAMES W. MEGIBBEN.
                        "JAMES W. MEGIBBEN, Administrator.
                        "ESTATE OF T. J. MEGIBBEN.
                        "O. L. PERIN, for Himself and Associates."

The equities of the cause are with the complainants, unless the title to the real estate described in the contract is defective. Thomas J. Megibben died intestate, leaving minor heirs. He was seised at the time of his death of the legal title to an undivided one-half of the real estate of the Sharpe distillery, and to an undivided two-thirds of the real estate of the Excelsior distillery. These pieces of real estate were partnership property,—the first, of the Sharpe Distilling Company, a firm composed of J. K. and T. G. Megibben, of the one part, and the G. R. Sharpe Company, incorporated, of the other part; the second, of the firm of T. J. Megibben and J. K. Megibben, of the one part, and the Megibben Excelsior Company, incorporated, of the other part. On the 30th of January, 1890, James K. Megibben, as surviving partner of said company, in consideration of $75,000, paid by the delivery to him of 750 $100 shares of paid-up capital stock of the said G. R. Sharpe

Distilling Company, incorporated, conveyed to said company in fee the undivided one-half of the real estate of the Sharpe distillery, of which Thomas J. Megibben died seised. On the same day, in consideration of $75,000, paid by the delivery to him of 750 $100 shares of the paid-up capital stock of the Megibben Excelsior Company, James K. Megibben, as surviving partner of T. J. Megibben & Bro., conveyed in fee to the Megibben Excelsior Company the undivided two-thirds of the real estate of the Excelsior distillery, of which Thomas J. Megibben died seised. It is conceded that James K. Megibben, as surviving partner, would have been entitled, in a proceeding against the widow and heirs of Thomas J. Megibben, to sell said property if necessary for the payment of partnership debts, but defendants deny the validity of the sale, because it appears from the record that there were no partnership debts. It is not clear from the authorities generally that the deeds were therefore invalid. The supreme court in *Shanks* v. *Klein*, 104 U. S. 18, held that the right of the surviving partner to the real estate of the copartnership is an equitable right, accompanied by an equitable title. The legal title of copartnership property may be in one or more of the partners; but in every such case equity regards him or them as holding in trust, and the copartnership as the beneficial owner. Therefore, although in such case the survivor cannot by his deed pass the legal title, which descended to the heir of the deceased partner, yet as the heir holds the title in trust to pay the debts, and the survivor is charged with that duty, his deed will convey the equity to the purchaser, who may compel the heir to convey the legal title.

This was the holding in *Andrews' Heirs* v. *Brown's Adm'r*, 21 Ala. 437, and in *Dupuy* v. *Leavenworth*, 17 Cal. 262, cited with approval by the supreme court in *Shanks* v. *Klein*. It has been held that the buyer is not bound to see to the application of the purchase money, as such burden would greatly reduce the value. *Tillinghast* v. *Champlin*, 4 R. I. 173; *Griffey* v. *Northcutt*, 5 Heisk. 746, (decided in accordance with the statute in Tennessee.) It may be, therefore, that the purchaser was not bound to ascertain whether, as a matter of fact, there were debts of the copartnership, for the payment of which it was necessary to sell the real estate, and that the conveyance would transfer to him the equitable ownership of the partnership, even if there were no debts, notwithstanding the general rule that the grantee of an equitable title takes no greater interest than his grantor had the right to convey, and that the remedy of the heir at law would be against the surviving partner personally, unless it was shown affirmatively that the purchaser knew, or was chargeable with notice, that there were no debts.

The rule approved by the court of appeals of Kentucky is that real estate bought with partnership funds, to be used in the partnership business and for partnership purposes, is to be regarded as partnership property, impressed with the characteristics of personalty for all purposes, not only as between the partners *inter se*, and the firm and its creditors, but also as to distribution between the administrator, distributees, and heirs. *Divine* v. *Mitchum*, 4 B. Mon. 488; *Bank* v. *Hall*, 8

Bush, 678; *Spalding* v. *Wilson*, 80 Ky. 590; and *Flanagan* v. *Shuck*, 82 Ky. 620. From these cases it appears that the rule in Kentucky is that real estate purchased by the partnership for the conduct of its business is to be regarded as personalty, and that the surviving partner has the power to sell, and with the aid of a court of chancery can convey the title to a purchaser. See, also, *Rammelsberg* v. *Mitchell*, 29 Ohio St. 53.

But it is not necessary to decide these questions, for it appears from the record that counsel for the defendant Perin and his associates objected to the title on the ground that the deed by the surviving partner was not valid. Thereupon the adult heirs of T. J. Megibben, together with James K. Megibben, conveyed to the incorporated companies all their interest in these properties, and those companies thereby acquired title to all the property excepting the interest of the minor heirs of T. J. Megibben.

It further appears from the record that by proceedings in the chancery court of Harrison county, Ky., instituted by the guardian of the minor children of Thomas J. Megibben against the G. R. Sharpe Company and others, and like proceedings against the Megibben Excelsior Company and others, the conveyances aforesaid by J. K. Megibben, as surviving partner, to said companies, were confirmed, and it was further decreed that conveyances should be made by the master commissioner of said court to said companies of all the right, title, and interest of the minor children and heirs of Thomas J. Megibben, and deeds were made accordingly. This proceeding was conducted under section 490 of the Civil Code of Practice of Kentucky, which provides that—

"A vested estate in real property, jointly owned by two or more persons, may be sold, by order of a court of equity, in an action brought by either of them, though the plaintiff or defendant be of unsound mind, or an infant, * * * if the estate be in possession, and the property cannot be divided without materially impairing its value, or the value of the plaintiff's interest therein."

The facts were found by the court to be such as, under the requirements of this provision, were necessary to authorize the sale and conveyance. The mother of the minor children joined in the suit with the minors, who appeared by their statutory guardian. The court found that the property was partnership property, that it was indivisible, and was only suitable for a distillery, and that their interest required that it should be sold to the companies aforesaid. The court of appeals of Kentucky, in the case of *Power* v. *Power*, (Ky.) 15 S. W. Rep. 523, (decided February 19, 1891,) held, in a case involving like questions, that the power of the court to order the sale and conveyance was unquestionable. The court said:

"The appellees and appellant own a store-house and lot in Maysville, with a front of thirty-three feet. The appellant owns three-sixths of the lot, and the appellees the other half, subject to the one-third dower interest of the widow. The widow and her co-appellees filed this petition under section 490 of the Code. It is alleged that this property cannot be sold without materially impairing its value, and that a sale would redound to the interest of all parties. The interest of the infant appellees is asked to be reinvested for

them by the chancellor. It is apparent from the record that no division of this property can be had, and we cannot perceive why it should not be sold, and the proceeds divided. The widow, who has a dower in this lot, is not proceeding in her own right to deprive by sale the remainder-men of the fee, under section 491. This is a vested interest, by parties in possession of property that cannot be divided, and the question of whether the sale will be beneficial is not involved, though alleged; and, while the chancellor will see that the interests of the infants are not sacrificed, a party jointly interested has the right, where the property cannot be divided, to demand a sale. By virtue of the provisions of section 490, the infants had the right to sue by their mother, who is their statutory guardian, and no defense is required to be made for them where they unite as plaintiffs.

"The object of the guardian is to reinvest the proceeds for the infants,—that is, to the extent of their interest,—and no bond is required, as the proceeds will be under the control of the chancellor."

This case is decisive, and leaves no room for doubt that by virtue of the deeds, and of the legal proceedings aforesaid, the entire title passed to and is vested in said companies.

Upon the hearing it was claimed for the defendants that the complainant James K. Megibben is to be treated as a purchaser in this case, and that he is therefore a necessary party defendant; and being such, and with the other complainants a resident of the state of Kentucky, the court has no jurisdiction of the case. This is ingenious, but not sound. James K. Megibben is not a party defendant, nor can he in any view be regarded as such. It is true that he is one of the associates of the defendant Perin, but he is ready and willing to perform the contract. The decree is sought against Perin and his associates, who are unwilling; and it would not be against him, but against them, to compel them to join with him in receiving and paying for the capital stock, which represents the real property involved. He is therefore properly a complainant, and as much interested in securing a decree against the defendants as are his co-complainants.

It was also claimed upon the hearing that this is not a case for the remedy of specific performance, because the contract relates to personal property; that is to say, to the entire capital stock of the two corporations owning the real estate. The purpose was to transfer the real estate and the plant connected with the distilleries. That is apparent from the contract itself, and is abundantly proven by the testimony. In *Leach* v. *Fobes*, 11 Gray, 510, the court decreed specific performance of the contract, holding that where the agreement for the sale of the shares forms part of a contract for the sale of real estate, and the suit is brought for the conveyance of the land, as well as the transfer of the shares, the contract may be enforced in equity. In England it is well settled that any sale of shares of stock in a private corporation may be enforced by a decree for specific performance. *Duncuft* v. *Albrecht*, 12 Sim. 189; *Shaw* v. *Fisher*, 2 De Gex & S. 11, 5 De Gex, M. & G. 596; *Wynne* v. *Price*, 3 De Gex & S. 310. To the same effect are the following cases in this country: *Ashe* v. *Johnson*, 2 Jones, Eq. 155; *White* v. *Schuyler*, 1 Abb. Pr. (N. S.) 300; *Johnson* v. *Brooks*, 93 N. Y. 337; *Treasurer* v. *Commercial Co.*, 23 Cal. 390. In this last case the authorities are re-

viewed, and the question fully considered. Where the contract is for the sale of securities issued by the government, specific performance will not be decreed, since they may be easily purchased in the market; but the vendee's remedy is at law for damages. *Ross* v. *Railway Co.*, 1 Woolw. 26, 32; *Cud* v. *Rutter*, 1 P. Wms. 570; *Colt* v. *Nettervill*, 2 P. Wms. 304; *Buxton* v. *Lister*, 3 Atk. 383. If stock of a private corporation contracted to be sold is easily obtainable in the market, and there are no special reasons why the vendee should have the particular stock mentioned in the contract, he is left to his action at law for damages. Cook, Stocks, § 338. But here the contract is for all the stock of the corporation, and that clause of the contract was evidently adopted as an expedient to secure the transfer of the real estate. The objection to the jurisdiction of the court on this ground has, however, been practically abandoned. It is without merit, and cannot be sustained.

The only remaining objection is that of the alleged incumbrances upon the real estate, or indebtedness by the corporations. The Excelsior Company is free from debts, as appears from the testimony of J. W. Megibben. The Sharpe Company has a mortgage upon its lands for about $7,000, which it is shown is, by an arrangement with the holder, the Farmers' Bank of Cynthiana, to be paid off and canceled whenever the defendants take the property, and the payment and cancellation can be provided for by the decree, which will be for the complainants, with costs.